Filed 7/19/23  P. v. Williams CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAMIAN MONROE WILLIAMS,<br><br>    Defendant and Appellant. | B308247<br><br>(Los Angeles County<br>Super. Ct. No. BA206529) |

APPEAL from an order of the Superior Court of Los Angeles County, Curtis B. Rappe, Judge.  Reversed.

Law Offices of Tarik S. Adlai and Tarik S. Adlai for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews, Daniel Chang, David A. Voet and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2003, upon being instructed on imputed malice, among other theories, a jury found petitioner Damian Monroe Williams guilty of second degree murder. The same jury also convicted Williams's codefendant, Tyrone Killingsworth, of murder and found Killingsworth personally discharged a firearm causing death to another person. Williams filed a resentencing petition pursuant to Penal Code section 1170.95 (later renumbered as section 1172.6), which was enacted "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."[1] (Stats. 2018, ch. 1015, § 1, subd. (f).) "Section 1172.6 offers resentencing for petitioners who have not been determined beyond a reasonable doubt to have the degree of culpability now required for a murder, attempted murder, or manslaughter conviction." (*People v. Strong* (2022) 13 Cal.5th 698, 720 (*Strong)*.) After a resentencing hearing at which Williams testified, the resentencing court denied Williams's petition.

We conclude the resentencing court erred in relying on our recitation of facts on Williams's direct appeal to establish the facts for deciding William's petition for resentencing. Section 1172.6, subdivision (d)(3) required the court independently, and

---

[1] Petitioner brought his petition under former section 1170.95, which was amended effective January 1, 2022, and then renumbered as section 1172.6 without substantive change on June 30, 2022. (See Stats. 2022, ch. 58, § 10 (Assem. Bill No. 200).) We refer to the statute by its current number. Further statutory references are to the Penal Code unless otherwise stated.

based on admissible evidence, to determine whether petitioner was guilty beyond a reasonable doubt of murder as defined in the amended sections 188 and 189. The resentencing court's failure to act as an independent fact finder was thus error.

Because the error prejudiced Williams, we reverse the order denying Williams's petition. We remand for the resentencing court to hold a new section 1172.6, subdivision (d)(3) hearing at which both parties may present evidence. The resentencing court must act as an independent fact finder to determine whether Williams is guilty of murder under a currently valid theory of murder.

## BACKGROUND

Relying on the factual summary from this court's opinion on direct appeal, the resentencing court summarized the evidence at trial as follows: "[I]n 2000 [Grover] Tinner, [the murder victim] operated two houses in which crack cocaine was sold, the one on Gage Street and the other o[n] Brighton Street in Los Angeles. Tinner was known to have a 'nasty disposition,' particularly involving money, and had said that he would kill anyone who disrespected him. The Brighton Street house was in territory controlled by the Eight Trey Gangster Crips street gang, to which Williams belonged. Killingsworth was a former member of the Shotgun Crips. (Killingsworth claimed he had not been a member for the past 16 years), a gang which was friendly with the Eight Trey Gangsters. Tinner, who lived in Eight Trey Gangster territory, had previously been associated with the 74 Hoovers gang but was no longer 'gangbanging' at the time he was murdered. The Gage Street house was on the border of territory claimed by the Eight Trey Gangsters and a rival gang. Williams and Killingsworth had been at the Brighton Street

crack house at various times. Once while Killingsworth was there, he said that he was tired of the crack addicts at the house, that Tinner 'ain't running nothing here,' and Killingsworth would be glad when Williams 'come up.'

"Close to midnight on July 17, 2000, Williams and Killingsworth arrived at the Gage Street house. They were let in by Jeffrey Brooks, who was the 'doorman' that night. Several people were inside, including Milton Lewis, who was sitting at a table in the dining room from which drugs were being dispensed. Cash and a .22-caliber revolver were also on the table. Tinner was not there. While Killingsworth stayed by the front door, Williams approached Lewis and asked who was running the house. Lewis said that he was. Williams then picked up the revolver (the act that provided the basis of the grand theft conviction) and loudly identified himself by his gang moniker, Football. Williams repeatedly said that he was from Eight Trey, that he and Killing[s]worth were not there to rob or hurt anyone, but that they were 'going to shut this motherfucker down,' and that he 'do[es] it like Al Capone.' Williams tossed the gun to Killingsworth who remained near the front door. Someone from the house went to get Tinner, telling him that the Gage Street house was being robbed.

"Williams next went to one of the bedrooms of the house and ordered the people inside to come out and get on the floor. Williams returned to the dining room, told Lewis he knew there was another gun in the house and said, 'You're already dead, give me the gun.' When Lewis did not comply, Williams touched his waist area and said, 'You might not see my gun but my gun is closer than what you think.' Lewis then gave Williams a .44-caliber revolver that was in a nearby shoe box. Williams

4

handed the gun to Killingsworth and told him to return to the area of the front door, adding, 'You know what to do, T. Don't let me down.' Williams also told Lewis that if Tinner did not arrive in 20 minutes, Lewis would 'be the first motherfucker to get it in the head.'

"While waiting for Tinner to arrive, Williams put a $20 bill on the table where Lewis was sitting and took some cocaine off the table. Williams asked if the people in the house wanted any and provided cocaine to those who asked for it. In addition, during that time, Williams threatened to shoot two of the women at the house, one because she was moving around too much and the other when she reacted to the threat. At some point Williams took out a big rock of cocaine from his sock and told the people at the house that he knew their faces 'and if I catch you all buying from over here you know what's going to happen.' (The prosecution presented evidence that during this time defendants committed robberies of people at the house. Defendants were acquitted of these charges.)

"Tinner eventually arrived at the house. As he [Tinner] approached, Killingsworth, from his [Killingsworth's] vantage point by the front door, [Killingsworth] said to Williams, 'Get ready, man. Here come the boy.' Williams again told Killingsworth, 'Don't let me down,' and, 'You know what to do.' Tinner knocked on the front door, which Killingsworth opened. Tinner walked in holding a .45-caliber handgun and angrily asked what was going on. Killingsworth remained standing behind the open door. Williams identified himself as 'Football' and said he was not there to rob Tinner but wanted to talk to him.

"Meanwhile, Tinner's nephew, Don Toombs, had entered the house through another door.  Toombs grabbed Williams's head.  Williams yelled, 'T.,' and Killingsworth stepped out from behind the door.  Tinner pointed his gun at Killingsworth and the two struggled for each other's gun.  During the struggle, Killing[s]worth's gun discharged, hitting Tinner in the leg.  Tinner ran out the front door and away from the house.  Muriel Coleman, who was approaching the house to buy cocaine, saw a man running from the house and saw three shots being fired.  One of the shots hit Tinner in the back.  After running a short distance to an alleyway, Tinner collapsed and died.  Williams managed to get away from Toombs and fled.

"Tinner sustained two gunshot wounds, one to his right thigh and a fatal 'through-and-through' wound that entered his upper back, passed through his heart and other vital organs, and exited his body through the abdomen on a downward trajectory.  Police found a .22-caliber revolver and a .44-caliber revolver near the scene of the murder.  The .22-caliber revolver was loaded and had no expended casings.  The .44-caliber revolver had four expended casings and two live rounds.  The wound to Tinner's thigh had been from a .44-caliber weapon."

1.    *Information*

In an amended information filed February 7, 2003, the People charged Williams and codefendant Killingsworth with murdering Tinner (count one).  The People also alleged a gang enhancement.  Among other firearm enhancements, the People alleged that codefendant Killingsworth personally and intentionally discharged a firearm which caused great bodily injury and death.  With respect to Williams, the People alleged, among other firearm enhancements, that a principal personally

6

and intentionally discharged a firearm causing great bodily injury and death.

The People alleged the murder occurred while Williams and Killingsworth were engaged in the commission of a burglary and robbery and by means of lying in wait. The People also alleged Williams suffered a 1993 felony conviction for mayhem (§ 203).

In count two, the People alleged the robbery of money from Kenneth Hammond. In count three, the People alleged the robbery of money from Steve Finley. In count four, the People alleged the robbery of a handgun from Milton Lewis. Count five also alleged the robbery of a handgun from Milton Lewis. In count six, the People alleged the burglary of a commercial building occupied by Jeffrey Brooks and Milton Lewis with the intent to commit larceny or any other felony.

## 2.    *Jury findings*

In 2003, a jury found Williams and Killingsworth guilty of second degree murder, having failed to find him guilty of the first degree murder charge. The jury found true the allegation that "Grover Tinner was intentionally killed for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further or assist criminal conduct of gang members, pursuant to Penal Code section 186.22(B)(1) . . . ." The jury also found true that Williams committed grand theft of a .22-caliber handgun from Milton Lewis and found true the gang enhancement with respect to that offense. The jury found not true the robberies alleged in counts two and three (money from persons inside the crackhouse) and not true the allegation that a principal in the second degree murder personally and intentionally discharged a firearm causing great bodily injury of Tinner. The jury also found not true other firearm allegations.

7

The trial court declared a mistrial on counts 5 (robbery of a gun from Lewis) and 6 (burglary).

3. ***Prior appellate opinion (*People v. Killingsworth et al. *(Oct. 31, 2005, B171869) [nonpub. opn.] (*Killingsworth*))***

Our opinion on direct appeal states, "Tyrone Killingsworth and Damian Williams appeal from the judgments entered following a joint jury trial in which each was convicted of second degree murder and grand theft of a firearm, with further findings that the crimes were committed for the benefit of a criminal street gang and Killingsworth personally discharged a firearm that proximately caused death to another person. In bifurcated bench proceedings, defendants were also found to have suffered prior felony convictions." (*Killingsworth*, *supra*, B171869.)

The opinion further states, "The prosecutor argued that Williams and Killingsworth planned to kill Tinner when Tinner entered the house and that Killingsworth fired three shots from outside the front door, one of which inflicted the fatal wound. Defendants argued self-defense and that the prosecution had failed to prove who shot Tinner." (*Killingsworth*, *supra*, B171869.)

Presuming the existence of every fact in the light most favorable to the judgment (*Killingsworth*, *supra*, B171869), we rejected William's argument that insubstantial evidence supported that "Killingsworth killed Tinner with either express or implied malice." (*Ibid.*) We also held sufficient evidence supported Williams "aided and abetted a second degree murder that was committed with both express and implied malice." (*Ibid.*)

8

We affirmed both defendants' judgments of conviction but concluded the trial court had improperly added a 10-year term for the gang enhancement.  (*Killingsworth*, *supra*, B171869.)

### 4.    *Williams's petition for resentencing*

On February 15, 2019, Williams filed a petition for resentencing.  In opposition, the People primarily argued that Williams was guilty of murdering Tinner because he acted as a major participant with reckless indifference to human life.[2]  The People also argued the same evidence supporting that Williams had reckless indifference to human life showed he harbored intent to kill.  In reply, Williams asserted he had no intent to kill and was not a major participant in an underlying felony who acted with reckless indifference to human life.

The resentencing court issued an order to show cause and held an evidentiary hearing.  Although Williams did not testify at trial, he did testify at the order to show cause hearing.  No one else testified.

Williams testified he went to the Gage Street house not to hurt or rob anyone, but only to conduct business with Tinner. When he saw a .22-caliber gun lying on a table, he picked it up and handed it to Killingsworth.  Williams then saw Lewis reach for a .44 Magnum, which Lewis gave to Williams and Williams handed to Killingsworth.  Williams denied telling Killingsworth

---

[2] At the resentencing hearing, the prosecutor did not identify the underlying felony in which Williams was a major participant.  Under current law, however, unless the victim is a peace officer, to be convicted of felony murder a person must, inter alia, be a major participant in an underlying felony.  (§ 189, subd. (e)(3).)

9

as he handed him the second gun, " ' Okay, you know what to do.' " Williams testified he expected Killingsworth to "[h]old the gun until we leave."

Williams further testified he was not carrying a weapon and had nothing to do with the shooting. "We wasn't there to hurt nobody. It all just went bad so fast. We didn't expect none of this type of stuff to take place . . . . [¶] . . . [¶] I didn't go there to take over his business. I only went there to try to do business with this man, to sell some product that I had . . . ."

According to Williams, when Tinner entered the house, Don Toombs put a gun to Williams's head and Williams "tuss[led]" with Toombs. Williams could not see if anyone was shot. Killingsworth told Toombs to " 'let my homie go.' " Toombs let go and Williams took the gun from him and left through the front door in an opposite direction from Killingsworth. The next day Williams turned himself in because he "didn't do nothing. I had no reason to lie."

During cross-examination Williams testified that after the shooting, he told Toombs, " 'I didn't kill nobody.' " Williams further testified on cross-examination that he did not know who killed Tinner and "didn't even know what happened."

5.    ***The resentencing court denied Williams's resentencing petition***

After the parties' presentations, the resentencing court stated, "[T]his isn't a retrial. It's not a motion for new trial where I am the finder of fact." Rather, the court stated because the appellate opinion had found sufficient evidence to support implied or express malice, it would deny Williams's petition.

In a written order, the resentencing court quoted the facts set forth above from our opinion on direct appeal and stated the

appellate court found evidence sufficient to support Williams's conviction as a direct aider and abettor. The court concluded Williams could have acted with express malice because our opinion on direct appeal established that sufficient evidence supported such a theory.

Although the resentencing court did not identify the underlying felony, the court also concluded Williams could be convicted of felony murder because he was a major participant in an underlying felony and acted with reckless indifference to human life. The court found Williams had planned the entire criminal enterprise to "shut down Tinner's crack house . . . and eliminate Tinner as a competitor."

## DISCUSSION

We conclude the resentencing court misapplied section 1172.6 by not acting as an independent fact finder, but instead, relying on facts recited in our opinion on direct appeal. We also conclude this error was prejudicial. Accordingly, we remand for a new hearing under section 1172.6, subdivision (d)(3).

**A.    Section 1172.6 Narrowed the Felony-Murder Theory, Rejected Imputed Malice for Murder, and Established Procedures for Eligibility for Resentencing Under These Substantive Changes**

"In Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), the Legislature significantly narrowed the scope of the felony-murder rule. It also created a path to relief for defendants who had previously been convicted of murder on a felony-murder theory but who could not have been convicted under the new law. Resentencing is available under the new law if the defendant neither killed nor intended to kill and was not 'a major

11

participant in the underlying felony [who] acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] Section 190.2.' [Citations.]" (*Strong, supra,* 13 Cal.5th at p. 703.) The Legislature also eliminated murder liability based on the natural and probable consequences doctrine. (*Id.* at p. 707, fn. 1.)

"Section 189, as amended, now provides that in cases where a death occurs during the perpetration or attempted perpetration of a felony listed in section 189, subdivision (a), a person is liable for murder only if the person was the actual killer, the person acted with intent to kill in aiding, assisting, or soliciting the killer, or if the person 'was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' (§ 189, subd. (e)(3).) Our Supreme Court has recognized, however, that 'notwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life.' [Citation.]" (*People v. Schell* (2022) 84 Cal.App.5th 437, 442 (*Schell*), quoting *People v. Gentile* (2020) 10 Cal.5th 830, 850.) Thus, second degree murder based on implied malice is still a valid theory of murder. (*Schell, supra,* at p. 444.)

Section 1172.6 resentencing procedures are designed to allow petitioners to "seek [ ] prospective relief from a murder conviction that was presumptively valid at the time." (*Strong, supra,* 13 Cal.5th at p. 713.) If a petition states a prima facie case for resentencing, the resentencing court must issue an order

12

to show cause, and "must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' [Citation.]" (*People v. Lewis* (2021) 11 Cal.5th 952, 960 (*Lewis*); § 1172.6, subd. (d)(1).)

At the hearing stage, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, . . . . that the petitioner is ineligible for resentencing." (§ 1172.6, subd. (d)(3).) At the evidentiary hearing, the resentencing court sits as an independent fact finder (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951) and may consider new theories not presented at trial (*Schell*, *supra*, 84 Cal.App.5th at pp. 444–445). Either party may present new evidence. (§ 1172.6, subd. (d)(3).) The resentencing court may consider the procedural history outlined in an underlying appellate opinion, but not its factual recitation. (*Ibid.*) If a petitioner could be convicted of murder under current law, the petitioner is not entitled to resentencing. (*People v. Guillory* (2022) 82 Cal.App.5th 326, 333.)

**B.  The Resentencing Court's Failure To Evaluate the Evidence Independently Prejudiced Williams**

In concluding that Williams could still be convicted of second degree murder if he harbored malice aforethought, the resentencing court relied on facts recited in our opinion on Williams's direct appeal. As respondent acknowledges, this was error. (*People v. Cooper* (2022) 77 Cal.App.5th 393, 400, fn. 9 (*Cooper*) ["Senate Bill 775 prevents a trial court from relying on facts recited in an appellate opinion to rule on a petition under section 1170.95"].) Under section 1172.6, the resentencing court

13

must act as an independent fact finder "to determine beyond a reasonable doubt whether [a] defendant *is* guilty of murder under a valid theory of murder." (*People v. Garrison* (2021) 73 Cal.App.5th 735, 745 (*Garrison*), italics added; see also *People v. Guiffreda* (2023) 87 Cal.App.5th 112, 123 ["Senate Bill No. 775 clarified that the trial court's role in a section 1172.6 proceeding is to act as an independent fact finder and determine, in the first instance, whether the petitioner committed murder under the law as amended by Senate Bill No. 1437."].)

The error in applying the incorrect standard to evaluate the evidence is not structural (*Garrison*, *supra*, 73 Cal.App.5th at pp. 746–747), but it was prejudicial here under either *Chapman v. California* (1967) 386 U.S. 18, 24 or *People v. Watson* (1956) 46 Cal.2d 818, 836. First, an independent trier of fact could find Williams credible, and based on his testimony at the hearing, conclude Williams did not harbor malice aforethought in Tinner's killing. Indeed, the resentencing court recognized that Williams's testimony "creates an issue of fact if there were a retrial" but did not consider the factual issue because the court concluded resentencing hearing was not a "retrial."

Second, an independent trier of fact at the hearing may view the trial transcript in a manner more favorable to Williams than we did on direct review because our review was only for substantial evidence. Our standard of review also required us to take all inferences in favor of the judgment and not to engage in credibility determinations or reweigh evidence. In contrast, the resentencing court must independently find facts. For example, Williams claims the trial transcript supports the theory that he and Killingsworth were friendly with Tinner and "did not go to Tinner's crackhouse intending assault, let alone [to] kill, Tinner

14

or commit any other crime." According to Williams's testimony, his goal was only to do business with Tinner.

Third, the resentencing court misconstrued *Killingsworth*, which considered Killingsworth's, but not Williams's, mental state. (*Killingsworth*, *supra*, B171869.) The resentencing court thus prejudicially erred in relying on our appellate decision to conclude Williams acted with implied or express malice.

Respondent argues that like in *Garrison*, *supra*, 73 Cal.App.5th 735, 745, the failure here to act as an independent fact finder was not prejudicial. In *Garrison*, the petitioner admitted to personally using a handgun in the course of a murder, which we concluded was "tantamount to admitting that he was the actual killer." (*Ibid.*) Here, there was no similar admission. Finally, respondent's citation to cases finding substantial evidence supporting second degree murder suffers from the same shortcoming as our factual recitation on direct appeal because in applying the substantial evidence standard of review, appellate courts view evidence in the light most favorable to the verdict.

## C. On Remand, the Parties May Present Additional Evidence at the New Order To Show Cause Hearing

We reject Williams's argument that the People may not present any new evidence on remand. At the time of the resentencing hearing, the law was unsettled. Subsequent to Williams's resentencing hearing, Courts of Appeal disagreed as to the appropriate standard in an order to show cause hearing. (See *Garrison*, *supra*, 73 Cal.App.5th at p. 745 [explaining that prior to the Supreme Court vacating *People v. Duke* (2021) 286 Cal.Rptr.3d 703, there was a disagreement in the law concerning the resentencing court's role in evaluating the

15

evidence at a §1172.6, subd. (d)(3) hearing].) The resentencing court's reliance on what turned out to be an incorrect standard does not show that Williams is eligible for resentencing as a matter of law. We thus remand for a new hearing at which either party may present new evidence consistent with section 1172.6 subdivision (d)(3). (See *Cooper, supra*, 77 Cal.App.5th at p. 418 [where the resentencing court erred in the evidentiary hearing on a petition under former § 1170.95, the appellate court concluded it was "appropriate to remand the matter for a new hearing on whether [the petitioner] is entitled to relief"]; see also *People v. Henley* (2022) 85 Cal.App.5th 1003, 1021 (*Henley*).)

The resentencing court's reliance on our prior opinion also is not an error that forecloses the People from presenting new evidence. In advance of the prior resentencing hearing, the People indicated that the resentencing court should consider "the appellate record and opinion affirming the judgment" and Williams agreed, also stating that the resentencing court could consider "the appellate record and opinion affirming the judgment . . . ." (Boldface omitted from first quotation.) Neither the parties nor the court could have anticipated the Legislature's subsequent amendment to section 1172.6 allowing consideration of an appellate opinion only for its recitation of procedural history.

On remand, the People may seek to prove a currently valid murder theory. (*People v. Hernandez* (2021) 60 Cal.App.5th 94, 110.) However, we caution the resentencing court that absent new relevant evidence, it cannot rely on the opposite of a fact found by the jury. *Cooper, supra*, 77 Cal.App.5th 393, which we find persuasive, holds that a resentencing court, which is a trier of fact at a section 1172.6, subdivision (d)(3) hearing, cannot deny

16

relief based on a finding "inconsistent with a previous acquittal when no [relevant] evidence other than that introduced at trial is presented." (*Cooper*, *supra*, at p. 398; see also *Henley*, *supra*, 85 Cal.App.5th at p. 1019 [following *Cooper*].) We decline to opine whether the trial transcript and prior section 1172.6, subdivision (d)(3) hearing transcript would support a currently valid murder theory because the parties may present new evidence upon remand. We further observe that the resentencing court may not increase Williams's punishment even if arguendo it finds that new evidence would support a first degree murder theory. (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 588 [resentencing petition cannot "hurt a defendant"]; *Lewis*, *supra*, 11 Cal.5th at p. 960 [new sentence cannot be greater than initial sentence].)

## DISPOSITION

The order denying Damian Monroe Williams's resentencing petition is reversed.  On remand, the resentencing court shall hold a new Penal Code section 1172.6, subdivision (d)(3) hearing consistent with this opinion.  Our opinion neither limits the People's ability to pursue a currently valid murder theory nor endorses any such finding by the resentencing court.  If the prosecution meets its burden of proof beyond a reasonable doubt that Williams is guilty of murder under current law, the resentencing court must deny Williams's petition for resentencing.  (*People v. Gonzalez* (2023) 87 Cal.App.5th 869, 880–881.)  If the prosecution does not meet its burden of proof, the court shall vacate Williams's murder conviction and resentence him on his remaining convictions.  (*Id.* at p. 881.)

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.